892 F.2d 1044
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James A. WHITE, Defendant-Appellant.
 No. 89-6033.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1989.
 
 Before KEITH, RALPH B. GUY, Jr. and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant James A. White ("White") appeals the district court's order denying his motion to suppress evidence obtained during a search incident to his arrest. White based his motion to suppress on the ground that the arresting officer, Lonnie Stevens ("Officer Stevens"), lacked probable cause to stop the vehicle that White was operating, and therefore conducted a search and seizure in violation of the fourth amendment. The district court found, however, that Officer Stevens had a reasonable suspicion, supported by articulable facts, that White might be engaging in criminal activity. The district court concluded that because Officer Stevens's arrest did not constitute an unconstitutional seizure, suppression of the firearm was not warranted. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 On February 18, 1988, a grand jury returned an indictment against White, charging him with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). White moved to suppress the introduction of the firearm into evidence on April 8, 1988. On April 28, 1988, the district court allowed White to withdraw the motion to suppress. He entered a plea of guilty on May 2, 1988. However, on May 16, 1988, White moved to withdraw his guilty plea and renew his motion to suppress. The district court granted White's motion to withdraw his guilty plea on May 25, 1988 and reinstated the motion to suppress on June 8, 1988. Following an evidentiary hearing, the district court granted White's motion to suppress in a judgment entered on June 17, 1988.
 
 
 3
 On appeal, this court reversed the judgment of the district court and remanded the case for further proceedings. United States v. White, 871 F.2d 41 (6th Cir.1989) (holding that Officer Stevens conducted a valid search incident to White's arrest). We, however, refrained from considering White's challenge to the stop itself, since the district court made no factual findings concerning the nature of the stop. Id. at 43. On remand, White moved to suppress the firearm and challenged the validity of the stop. The district court's judgment, entered on June 8, 1989, denying the motion to suppress based on a constitutionally invalid stop gave rise to the present appeal.
 
 B.
 
 4
 At about 9:25 p.m., on April 14, 1987, White was driving southbound on Dickerson Road, a four-lane street in Nashville, Tennessee. White testified that he had been drinking and stopped at a store to purchase more beer. White pulled out from the parking lot of the store and into the left lane because he intended to turn left at the upcoming intersection of North First Street and Dickerson Road. White observed another car stopped in the lane ahead of him and moved into the right lane to avoid it. He noticed the blue lights of a Ford Bronco, approaching him from behind. White moved back into the left lane to permit the Bronco to pass him.
 
 
 5
 Officer Stevens, the driver of the Bronco, observed White's erratic driving pattern and decided to investigate.[1] He signaled to White to turn into an empty parking lot. White then got out of his car and produced his driver's license at Officer Stevens's request. Officer Stevens detected alcohol on White's breath and conducted a field sobriety test that required White to touch his nose. White failed the test repeatedly.[2] Based on White's poor sobriety test performance, Officer Stevens decided to take White into the police station in order to administer a breathalyzer test. Officer Stevens placed White under arrest on the charge of driving while intoxicated.
 
 
 6
 Officer Stevens testified that he retrieved the firearm after he went to White's car, peered inside through an open window, and detected a .38 caliber revolver in plain view on the floorboard between the driver's seat and the brake pedal. According to White's version of the events, Officer Stevens found the firearm under the seat after he opened the car door and searched the interior, the seats and the glove compartment.
 
 
 7
 At the police station, White's breathalyzer test results indicated a blood alcohol level of .10 percent.[3] Officer Stevens charged White with driving under the influence of alcohol and carrying a firearm.
 
 II.
 
 8
 On appeal, White contends that his wholly lawful conduct failed to justify a reasonable suspicion that he was engaged in criminal activity. He also argues that the trial court erred in judging the reasonableness of Officer Stevens's suspicion by applying a subjective test. We disagree with White's contentions. We hold that the trial court properly applied an objective standard to the facts giving rise to the investigative stop and that Officer Stevens lawfully stopped White prior to the search of his vehicle.
 
 
 9
 The fourth amendment permits a police officer to stop an individual whom the officer reasonably suspects is involved in criminal activity. See, e.g., United States v. Sokolow, --- U.S. ----, 109 S.Ct. 1581, 1585 (1989) (emphasizing that an officer must be able to articulate something more than an "inchoate and unparticularized 'hunch' " because the fourth amendment requires a minimal level of objective justification for making the stop); Adams v. Williams, 407 U.S. 143, 145-46 (1972) (stating that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time"); Terry v. Ohio, 392 U.S. 1, 22 (1968) (recognizing that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest"). To determine the constitutionality of an investigative stop, the fourth amendment requires an objective inquiry into whether the "facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." Terry, 392 U.S. at 21-22 (citing Beck v. Ohio, 379 U.S. 89, 96-97 (1964); Carroll v. United States, 267 U.S. 132 (1925)).
 
 
 10
 The district court properly found that the facts Officer Stevens articulated as the basis for the investigatory stop were sufficient to satisfy the fourth amendment's reasonable suspicion requirement. The district court found clear and convincing evidence that White changed lanes three times within a short span of time and distance. In light of the evidence of White's erratic driving, the district court was unable to find that Officer Stevens perjured himself by characterizing the driving as "weaving back and forth."
 
 
 11
 As evidence of the district court's alleged failure to apply an objective standard, White points to the following language:
 
 
 12
 This Court is unable to find, in light of such evidence, that Mr. Stevens perjured himself with his choate particularized description of such maneuvering as constituting (in his mind) the "weaving back and forth" of Mr. White, Jr., in the operation of the car.
 
 
 13
 United States v. White, No. 3:88-00021, slip op. at 9 (M.D.Tenn. June 8, 1989). White contends that the parenthetical phrase, "in his mind," indicates that the district court applied a subjective standard that clearly violates the objective test mandated by Terry. We are unpersuaded by White's interpretation of the district court's language. The district court, responding to the credibility issue raised by the discrepancy in the testimonies of Officer Stevens and White regarding the three lane changes, merely indicated that Officer Stevens's characterization of the vehicle's movement as "weaving back and forth" did not constitute perjury. The evidence is clear that White changed lanes three times in a very short period of time and distance.[4] Such erratic driving would give rise to a suspicion of criminal activity in the mind of a reasonable police officer. Citing Sokolow 's interpretation of Terry extensively, the district court properly applied Terry 's objective test to the facts as alleged by White. United States v. White, No. 3:88-00021, slip op. at 5-6 (M.D.Tenn. June 8, 1989).
 
 III.
 
 14
 We hold that the district court properly applied the objective test required by Terry and, most recently, Sokolow. After careful review of the record, we are persuaded that the district court was correct in concluding that Officer Stevens's suspicion that White might be engaging in criminal activity was reasonable and supported by articulable facts. Accordingly, the judgment of the Honorable C.G. Neese of the United States District Court for the Middle District of Tennessee is AFFIRMED.
 
 
 
 [1]
 Officer Lonnie Stevens is a vice officer from the Nashville/Davidson County government. On the evening of the arrest he had been conducting a plain clothes investigation of prostitution
 
 
 [2]
 Despite Officer Stevens's failure to so recollect at the evidentiary hearing, he told a Federal Alcohol, Tobacco and Firearms agent that he also required White to stand on one foot
 
 
 [3]
 Tenn.Code Ann. § 55-10-408(b) provides, in pertinent part:
 [E]vidence that there was, at the time alleged, ten-hundredths of one percent (.10%), or more, by weight of alcohol in the defendant's blood, shall create a presumption that the defendant was under the influence of such intoxicant, and that his or her ability to drive was impaired....
 
 
 [4]
 Officer Stevens testified, "[White] was in the extreme right lane the first time I observed him. And then he weaved over into the left lane and back into the right lane. That's why he was stopped." Transcript of Evidentiary Hearing at 5 (June 22, 1988) (hereinafter "Tr."). Officer Stevens later testified that White "moved over partially into the left lane, two wheels like in the left lane, weaving back and forth between them.... From the right lane he weaved into the left lane with part of his vehicle, and weaved back into the right lane, and back and forth at least twice." Tr. at 13-14. Although White admits to the three lane changes, he testified that he did not believe he was weaving. Tr. at 33
 The contradictory testimony, differing with respect to the manner in which White was driving the car, raised the issue of perjury. There are other discrepancies in White's testimony that are not relevant to the issue of the stop's validity. The district court conceded that Officer Stevens "was not a paragon of credibility and his testimony was of dubious weight." United States v. White, No. 3:88-00021, slip op. at 6 (M.D.Tenn. June 8, 1989). However, we agree with the district court's finding that the variation in testimony did not support a finding that Officer Stevens perjured himself.